1

2

3

4

5                          **UNITED STATES DISTRICT COURT**

6                                **DISTRICT OF NEVADA**

7

8    JAMES M. HARRISON,                          )
                                                 )
9                    Petitioner,                 )        2:08-cv-00802-RCJ-RJJ
                                                 )
10   vs.                                         )
                                                 )        **ORDER**
11   THE EIGHTH JUDICIAL DISTRICT                )
     COURT OF THE STATE OF NEVADA,               )
12   *et al.*,                                   )
                                                 )
13                   Respondents,                )
                                                 )
14   and                                         )
                                                 )
15                                               )
     THE STATE OF NEVADA,                        )
16                                               )
                     Real Party in Interest.     )
17                                               )
     _____/

18

19           This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, by

20   James M. Harrison.

21           A Nevada state court jury found Harrison guilty of first degree murder, and then,

22   under Nevada law, his case proceeded to the penalty phase of the trial, to determine Harrison's

23   sentence.  In the penalty phase, the jury deadlocked, and the court declared a mistrial.  Petitioner now

24   awaits a retrial of the penalty phase of his trial.

25           As grounds for relief under § 2241, Harrison contends that, under the Double

26   Jeopardy Clause of the United States Constitution, the State is prohibited from seeking the death

1  penalty against him.  The court determines that Harrison is not entitled to habeas corpus relief, and

2  denies the petition.

3                                    *Factual background*

4            In 2002, fifty-eight year old Dan Miller was found dead in his Las Vegas apartment.

5  On November 12, 2002, Harrison and Anthony Dwayne Prentice were charged, in connection with

6  Miller's death, with conspiracy to commit murder, burglary, and murder with the use of a deadly

7  weapon.  Docket #2, pp. 70-74.  On November 20, 2002, the State of Nevada filed notice of its intent

8  to seek the death penalty.  *Id*., pp. 75-78.  The trials of Harrison and Prentice were severed.

9            On November 21, 2006, a jury found Harrison guilty of murder.  Following that

10  verdict, the case proceeded to the penalty phase of the trial before the same jury.

11            On November 27, 2006, after the evidence had been presented, and arguments made

12  by counsel, and after the jury had deliberated for some time, the jury announced that they were

13  deadlocked and were unable to reach a verdict as to Harrison's sentence.  *Id.*, pp. 30-36.  Just prior to

14  declaring a mistrial, the court had the jury foreperson turn over all the verdict forms, completed or

15  not, to the bailiff.  *Id*.  Among those forms were two "special verdict" forms that had been completed

16  and signed by the foreperson – one finding that an aggravating circumstance (the murder involved

17  the mutilation of the victim) had been established, and one finding that numerous mitigating

18  circumstances had been established.  *See id.*, pp. 93-95.  The jury did not fill out the verdict forms

19  that were to be used to indicate whether or not mitigating factors outweighed the aggravating

20  circumstance, and what sentence was to be imposed.  *See id.*, pp. 46-47.

21            At the outset of the November 27 hearing, Harrison's counsel requested that the court

22  inquire as to whether the jurors had made any determinations regarding the existence of aggravating

23  circumstances and regarding whether they had reached a decision regarding the death penalty.  *Id.*,

24  pp. 30-36.  The State opposed that motion.  *Id*.  The trial court denied the motion, and did not poll

25  the jury in the manner requested by Harrison's counsel.  *Id*.

26

2

1    Thereafter, on June 20, 2007, Harrison filed a Motion to Strike the Death Penalty,

2  arguing that, by again seeking the death penalty, the State would be subjecting him to

3  unconstitutional double jeopardy. *Id*., pp. 15-36.  The State filed an opposition to that motion.

4  *Id*., pp. 38-47.  Petitioner filed a reply.  *Id.*, pp. 49-52.  The state district court denied the motion on

5  July 12, 2007.  *Id.*, pp. 54-55.

6    On July 13, 2007, Harrison filed, in the Nevada Supreme Court, a Petition for Writ of

7  Mandamus, or, in the Alternative, a Writ of Prohibition and Emergency Motion for Stay of

8  Proceedings, seeking an order that the state district court strike the notice of intent to seek the death

9  penalty. *Id*., pp. 57-131.  The State answered.  *Id*., pp. 133-55.  On September 7, 2007, the Nevada

10  Supreme Court denied the petition.  *Id*., pp. 157-58.

11    Harrison filed the instant federal habeas petition on June 20, 2008.  Harrison asserts

12  in his habeas petition that, after the dismissal of the jury, his counsel learned from certain jurors –

13  Robert Hecker (the jury foreman), Amy Ellwanger, and Suzanne Emerson – that the jury deadlocked

14  at nine to three, with nine jurors in favor of imposing a sentence of life in prison without the

15  possibility of parole, and three jurors in favor of imposing a sentence of life in prison with the

16  possibility of parole, and that none of the twelve jurors was in favor of imposition of the death

17  penalty.  Harrison relies upon affidavits of the three aforementioned jurors in making this assertion.

18  *Id*., pp. 23-28.

19    In state court proceedings, the State produced an affidavit of another juror –

20  Mary Pizzi – stating that "[t]he death penalty was never 'off the table' as a potential punishment

21  option for me as a juror."  *Id*., p. 45.

22    ***Discussion***

23    As noted, Harrison contends that the Double Jeopardy Clause of the Fifth

24  Amendment prohibits the State of Nevada from pursuing the death penalty against him.  Harrison is

25  not held in custody pursuant to the judgment of a state court, as no judgment of conviction has been

26  entered in his case; therefore, Harrison is in the position of a pretrial detainee, and his federal habeas

3

1    petition is made under 28 U.S.C. § 2241, rather than § 2254.  *See Stow v. Murashige,* 389 F.3d 880,

2    886 (9th Cir. 2004).  Because Harrison's double jeopardy claim presents an exception to the general

3    rule that a federal court must abstain from interfering in ongoing state criminal proceedings, this

4    court shall address the merits of his petition.  See *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th

5    Cir.1992) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

6            The Double Jeopardy Clause assures three basic protections – it protects against a

7    second prosecution for the same offense after acquittal, a second prosecution for the same offense

8    after conviction, and multiple punishments for the same offense.  *See United States v. Ursery*, 518

9    U.S. 267, 273 (1996); *Witte v. United States*, 515 U.S. 389, 395-96 (1995).  In *Bullington v.*

10   *Missouri*, 451 U.S. 430 (1981), the Supreme Court held that the clause applies to capital-sentencing

11   proceedings where such proceedings "have the hallmarks of the trial on guilt or innocence." *Id.* at

12   439.

13           Any argument that the clause does not apply to Nevada's capital sentencing

14   proceedings was foreclosed by the Supreme Court's decisions in *Ring v. Arizona*, 536 U.S. 584

15   (2002) and *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003).  In *Ring*, the Court held that the Sixth

16   Amendment requires aggravating circumstances be proven to a jury before the death penalty may be

17   imposed because the aggravating circumstances "operate as the functional equivalent of an element

18   of a greater offense" than a non-capital version of the same offense.  536 U.S.  609 (internal

19   quotation marks omitted).  In *Sattazahn*, the Court interpreted *Bullington* to hold that, for the same

20   reason, the Fifth Amendment's Double Jeopardy Clause applies to capital sentencing proceedings.

21   537 U.S. at 111 (plurality opinion of Scalia, J., joined by Rehnquist, C.J., and Thomas, J.), 125 n.6

22   (opinion of Ginsburg, J., joined by Stevens, J., Souter, J., and Breyer, J., dissenting on other

23   grounds).

24           Recognizing that the Double Jeopardy Clause applies to Nevada's capital sentencing

25   proceedings, this court agrees with Harrison's premise that an "acquittal" of the death penalty at

26   sentencing would terminate his initial jeopardy, thereby precluding the State of Nevada from further

4

1   pursuit of the ultimate punishment.  *See Arizona v. Rumsey*, 467 U.S. 203, 211-212, (1984) (holding

2   that trial judge's acquittal in sentencing phase barred second sentencing even though it was based on

3   erroneous construction of the law governing a particular aggravating circumstance).  *See also*, *Smalis*

4   *v. Pennsylvania*,  476 U.S. 140, 145 (1986) (noting that "acquittals, unlike convictions, terminate the

5   initial jeopardy") (citation omitted).  The problem for Harrison is that no plausible interpretation of

6   existing legal authority would allow this court to conclude that he has been acquitted of the death

7   penalty in the state proceeding at issue.

8          An acquittal in this context is  "an acquittal on the merits of the central issue in the

9   proceeding – whether death was the appropriate punishment for [petitioner's] offense."  *Rumsey*, 467

10  U.S at 211.   In concluding that an acquittal had occurred, the Court in *Rumsey* explained:

11          The trial court entered findings denying the existence of each of the seven
        statutory aggravating circumstances, and as required by state law, the court then
12      entered judgment in respondent's favor on the issue of death.  That judgment, based
        on findings sufficient to establish legal entitlement to the life sentence, amounts to an
13      acquittal on the merits and, as such, bars any retrial of the appropriateness of the
        death penalty.

14

15  *Id*.  Here, by contrast, Harrison asks this court to find an "acquittal" based on a hung jury, the

16  "special verdict" forms the jury had completed, and the affidavits from three jurors which were

17  signed and sworn several weeks after they had been excused from service.

18          The Supreme Court has made clear that a deadlocked jury in the penalty phase of a

19  capital case does not constitute an acquittal for double jeopardy purposes.  *See Sattazahn*, 537 U.S. at

20  109.  Evidence that Harrison's jury had found the existence of only one aggravating circumstance

21  and more than 20 mitigating circumstances does not change this result.  In Nevada, it is the relative

22  weight, not the number, of aggravating and mitigating circumstances that dictates the jury's decision

23  on the death penalty.  Nev. Rev. Stat. § 175.554.  *See*, *e.g*., *Johnson v. State*, 148 P.3d 767, 771

24  (Nev. 2006) (noting that jury had imposed the death sentence after finding seven mitigating

25  circumstances were outweighed by one aggravating circumstance).  For obvious reasons, this court is

26  not willing or able to conduct the weighing on the jury's behalf.

1            Similarly, the three affidavits Harrison has compiled do not transform the hung jury

2    into an acquittal.  Beyond the fact that they are not even competent evidence under Nevada law

3    (*see* Nev. Rev. Stat. § 50.065), the affidavits are a pale substitute for an actual verdict rendered by

4    the entire jury within the deliberation process.  This court shares the view of the Seventh Circuit

5    Court of Appeals, which aptly noted:

6            . . . "post-trial affidavits of individual jurors are rarely helpful to the process of
reviewing the collective action of a jury.  The institution of the jury has force only

7    when it acts authoritatively by rendering a unanimous verdict.  It is the verdict of the
jury, not the individual expressions of jurors after a trial, that carries legal heft."

8

9    *Jacobs v. Marathon County*, 73 F.3d 164, 169 (7th Cir. 1996).  The dangers of allowing such

10   affidavits to stand in the place of an actual jury determination or decision are readily apparent.  As

11   noted in the State's briefing in the state court proceedings, "[i]t is impossible to know what outside

12   influences may have tainted . . . the affidavits taken in this case several weeks up to several months

13   after the court's admonition[s] had been lifted."  Docket #2, p. 139.  Also suspicious is that, other

14   than information identifying the affiant and the dates executed, all three affidavits are virtually

15   identical to each other in all pertinent respects.  *See Jacobs*, 73 F.3d at 168 (noting that

16   "lawyer-generated affidavits . . . that  fit[] comfortably into a litigant's view of a case, invite[] the

17   raising of an eyebrow or two").

18           In summary, the affidavits, like the partially-completed verdict forms, fall well short

19   of constituting an acquittal, thereby taking Harrison out of initial jeopardy.  Consequently, there is no

20   constitutional impediment to the State continuing to pursue the death penalty against Harrison.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

1    **IT IS THEREFORE ORDERED** that the "Pretrial Petition For A Writ Of Habeas

2  Corpus Pursuant To 28 U.S.C § 2241 By A Person In State Custody" (docket #2) is DENIED.

3    **IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly.

4    **IT IS FURTHER ORDERED** that the Clerk shall serve a copy of the habeas corpus

5  petition (docket #2), and a copy of this order, on the following, by certified mail:

6    David Roger
   Clark County District Attorney
7    200 South Third Street, 5th Floor
   Las Vegas, NV 89155

8
   Catherine Cortez Masto
9    Nevada Attorney General
   100 North Carson Street
10   Carson City, NV 89701

11

12

13   Dated this  25th  day of June, 2008.

14

15                                            _____
                                              UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26  (df-p6)